## Auburn and Rush Poor Asylum's Case.

*Poor law—Poorhouses in Susquehanna County—Destruction of building— Petition to purchase other land—Assent of court—Special Acts of April 4, 1864, and March 11, 1870.*

1. Where a poorhouse has been totally destroyed by fire in the districts covered by the Special Acts of April 4, 1864, P. L. 266, and March 11, 1870, P. L. 393, in Susquehanna County, the court cannot give its "assent" to the purchase of other land for a new building as long as the land on which the old building stood, and the other buildings thereon, are adequate for the purposes of the poor district.

2. The district may rebuild the poorhouse on such land without the assent of the court.

Petition for assent of court to the purchase of land for a poorhouse. Q. S. Susquehanna Co., Aug. Sess., 1921, No. 9.

*John M. Kelly,* for plaintiff; *H. A. Denney,* for defendant.

SMITH, P. J., Nov. 14, 1921.—Upon petition of the Directors of the Poor of the Auburn and Rush Poor Asylum, presented Sept. 16, 1921, we appointed D. T. Brewster, Esq., master and investigator to take testimony and report upon the advisability of granting their application, and that every opportunity be given to every person resident or property owners in the Poor Townships of Rush, Auburn, Forest Lake and Springville, comprising said poor district to be heard, directed ten days' notice to be given, thus addressed in the Independent Republican and Montrose Democrat for two successive weeks, the last issue to be at least ten days prior to the date set for hearing by the master.

The master filed his report, evidence attached, in open court Oct. 15, 1921, upon which we, the same date, endorsed a rule to show cause why his recommendation should not be confirmed and a decree made in conformity therewith, returnable Oct. 31, 1921, and directed the clerk to publish notice of same in two issues of the newspapers above designated prior to the return-day.

From the petition of the directors and evidence taken before the master appointed, it appears that the proceedings are based primarily upon the Special Act of April 4, 1864, P. L. 266, "To provide for a poorhouse in the Borough of Montrose and Township of Bridgewater, in Susquehanna County," and one of March 11, 1870, P. L. 393, "To authorize the erection of a poorhouse in the Townships of Auburn and Rush, in the County of Susquehanna."

1 D. & C.

Both are still in force, and it is amended that later the Townships of Spring-
ville and Forest Lake were included with Auburn and Rush and now continue
component parts of the latter poor district, as allowed by the 22nd section of
the act. The Act of 1870 merely extended the provisions of the Act of 1864
to the district composed of Auburn and Rush Townships, now including For-
est Lake and Springville, constituting the commissioners therein named "with
all the powers conferred," and enjoining upon them "to discharge all the
duties enjoined by the said Act of 1864."

We must, therefore, refer to the Act of 1864 to determine what are the
powers and duties of the petitioners at bar and the powers and duties of the
court in the premises.

The 2nd section directs the commissioners designated therein, "as soon
after the passage of the act as practicable, . . . with the assent of the Court
of Quarter Sessions of Susquehanna County, . . . to purchase such real
estate as may be proper and necessary for the support of the poor" of said
district; to take conveyance therefor and secure unpaid purchase money if
any by "bonds or mortgages upon such real estate," and also "to erect thereon
suitable buildings."

They are also authorized to borrow . . . money . . . in their opinion advis-
able and necessary, not exceeding $6000; to pay for said real estate and
erect said buildings and secure the payment of the same by bonds and mort-
gages upon said real estate.

By the 3rd section, said commissioners named and their successors are con-
stituted "directors of the poor," . . . "a body politic and corporate in law,"
to take title and hold "lands, tenements and hereditaments, not exceeding the
yearly value of $3000;" to erect and keep in proper condition suitable build-
ings for the reception, use, accommodation and employment of the poor of
said district and provide all things necessary therefor.

Section 5 provides, *inter alia:* "Said directors shall exercise and enjoy all
other powers now vested in the overseers of the poor as are not herein granted
or supplied."

By section 8, when accomplished, the directors shall file in the Clerk's Office
of the Court of Quarter Sessions their certificate that they have acquired title
to real estate and provided the suitable buildings required by the 2nd section
of the Act of April 4, 1864, P. L. 266.

Section 24 repeals all laws of this Commonwealth "relating to the poor as
are hereby altered or supplied or are inconsistent with this act."

The master has found the following facts, *inter alia:*

That, complying with the foregoing provisions as to acquiring property for
its purposes, the directors now own, unencumbered, title to about 220 acres
within the district, upon which, Aug. 15, 1921, were located a frame house of
about forty rooms, two barns, garage, hog-pen, chicken-house, wood and coal-
house; and it is conceded that they were sufficient and adequate for the care
of the poor of the district.

That, Aug. 16, 1921, the house was totally destroyed by fire, since when it
has been necessary to hire board, lodging and care for the fifteen poor per-
sons, a charge upon the district, and accommodations as a residence for the
steward and his family elsewhere. That rebuilding of the house would cost
approximately $12,000, for the purpose of which there are available funds of
the district, $4087.72, or the same to apply on purchase money for other real
estate with buildings already thereon suitable for the purpose of the district;
an opportunity for which is presented by a written option expiring (now by
extension) Nov. 15, 1921, by N. D. Snyder of his farm in Rush Township,

comprising about 160 acres, with suitable buildings, at the price of $7000. Upon the buildings but little need to be expended for repairs and necessary changes.

The master reports, recommending that we, in the language of the 2nd section of the Act of April 4, 1864, P. L. 266, "assent" to the purchase by the petitioners of the N. D. Snyder farm, above mentioned, as prayed for by them, but deny their alternative request to either express our assent, approve or direct them to rebuild the house upon the 230 acres to which they still hold title, the latter for the reason that, whether they rebuild or not, is a question for the sole decision of the directors, and not within our province to recommend or control in these proceedings, and to which we agree. We suggest, in this connection, that the provisions of the 3rd section, giving to the directors power to keep in proper condition suitable buildings, appears to include power to "rebuild" in case of fire, and the closing clause of the 2nd section seems to furnish means of raising and securing funds for the purpose, not exceeding the $6000 mentioned therein, neither of which appear to require the assent of the court, although this suggestion is not expressed as a conclusive opinion, but a consideration of it is recommended as a possible means of rehabilitation by the directors of their present holdings, should they adopt the plan of rebuilding. We further refer to the existence of powers granted to the directors of this district to borrow money and secure its payment in the manner set forth in the Supplementary Act of May 24, 1871, P. L. 1089.

We are of the opinion that the master properly held that the court's authority to "assent," given by the 2nd section, is restrictive to the original purchase of real estate and erection of buildings thereon, and this having been exercised, the power of the court is exhausted in the absence of statutory authority in the act to give a similar "assent" to rebuilding. Analogous authority for this conclusion is found in Light et al. v. Houck, 2 W. N. C. 5, interpreting a similar provision to the one at bar in the Special Act of 1830, relating to Lebanon County.

It remains to be answered whether such authority in the court exists by virtue of legislation other than this Special Act of 1864, reference to which and discussion thereof is made by the master in support of his affirmative conclusion.

In this connection, we must note the repealing 24th section of the Act of 1864, above quoted, and relate its provisions to other existing legislation referred to by the master.

While we might exercise this authority of "assent" or "approbation" of purchase under the Act of June 30, 1885, P. L. 203, providing such district had not already acquired and now owns, as at bar, adequate and suitable real estate, we are still of the opinion in such case such authority is non-existent.

The Act of March 9, 1771, § 16, 1 Sm. Laws, 338, cited by the master, is still in force: Weidman v. Benton Township, 4 Luzerne L. T., N. S., 99. The purchase there authorized by overseers of the poor requires no action of the court, and is, therefore, inapplicable at bar.

We are, therefore, forced to the conclusion that there is no legislative authority given to us to enter our decree of "assent" to the proposed purchase of the Snyder property of 160 acres, prayed for by the petitioners, or any other real estate, so long as their present holdings are adequate and suitable, except the absence of the house thereon destroyed by fire, the rebuilding of which we have already suggested is for the determination of the directors without court action. In this we are compelled to differ from the determination of the learned master and fail to concur with his recommen-

1 D. & C.

dation on this point. We wish, however, to commend his very thorough investigation of the facts and examination and reference to the statutes and legal principles, which have been of great assistance to us in our consideration and review in the premises.

Possibly, and quite probably, our right and duty to act in the manner prayed for would obtain were a prior or contemporaneous petition for sale of the present real estate owned by the district presented to us, sitting as a Court of Common Pleas, under the Act of April 28, 1887, P. L. 75, but not otherwise.

In view of what appears a necessary delay of action and consequent lapse of time before adequate house accommodations can be provided, should rebuilding be decided upon as the only practicable solution of the present difficulty, the statutory provisions afforded by the Act of June 30, 1885, P. L. 203, for the temporary care of subjects of relief by this district by contracts with outside poor districts is fortunate and may have to be resorted to.

We are favorably impressed by the attitude taken by the directors, taxpayers and all counsel in their proceedings, which assures us that all endeavors have been, and will be, made by them and others, to effect the best interests of all concerned, both of the unfortunate poor and those who have to bear the burden of their maintenance, and which it is our purpose to conserve to the full extent of, but necessarily within, the circumscribed statutory limitations.

That full opportunity has been afforded all for hearing is evident from the appearance and evidence of and on the part of contestant taxpayers and their counsel before the master and in court, and the filing by the latter's order option to the directors, petitioners, for our action of purchase by them not only of the Snyder property, but also of other properties by the owners thereof, viz., Jesse S. Strickland, J. S. and Mary C. Howard, C. N. and Mrs. C. N. Giles, Louisa and Edward Cavanaugh, which, because of not being assented to by the petitioners or directors of the poor district, or made a part of their petition as alternative purchases, cannot be considered, for the reason that, both under the Act of 1864 and the general statutes referred to by the master and cited in the opinion, the action of the court must be founded upon the application of the directors themselves and not property owners.

And now, Nov. 14, 1921, the prayer of the petitioners at bar, for the reasons stated fully in the foregoing opinion, are dismissed, and it is directed that the costs of these proceedings be paid by the poor district, of which the petitioners are the directors or overseers of the poor.

From Gerritt E. Gardner, Montrose, Pa.